**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ANTHONY D. LAMAR** **PLAINTIFF**
**ADC #120479**

**v.** **Case No: 4:24-cv-00194-JM**

**LONNELL OQUIN SEAMSTER, SR., *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

## I. Introduction

Plaintiff Anthony D. Lamar, an Arkansas Division of Correction (ADC) inmate, filed this *pro se* 42 U.S.C. § 1983 action on March 1, 2024. Doc. No. 2. Lamar named APN Lonnell Seamster, Sr., Health Services Administrator Laconya Harris, and Deputy Medical Director Aundrea Culclager as defendants. *Id.* at 1-2. He alleges that APN Seamster was deliberately indifferent to his serious medical needs (peripheral neuropathy) by refusing to renew a prescription for medical shoes and ankle braces, by refusing to refer him to an orthopedic specialist, by discontinuing his prescription for gabapentin, and for not adequately treating complaints relating to his left wrist and hand. *Id.* at 5-7, 9, 11 13. Lamar further alleges that Health Services Administrator Harris took his ankle braces but allowed him to keep his medical shoes when he first transferred to the Tucker Unit, and that Harris refused to take corrective action on his behalf.[1]

[1] Lamar does not specifically raise a Fourteenth Amendment equal protection claim, but he generally alleges that Harris discriminated against him because she sends black inmates to Seamster for medical treatment and sends white inmates to Dr. Beck. *See* Doc. No. 2 at 10-11. He specifically alleges that she sent a white inmate to see Dr. Beck when he complained about needing medical shoes, whereas she sent him to Seamster again. *Id.* (Lamar was eventually seen by Dr. Beck as well, and Dr. Beck did not order different treatment than Seamster. *See Facts, infra*.) Lamar's one alleged instance of different treatment is insufficient to state a viable equal protection claim because it does not show that he was "systematically and intentionally treated differently" than other inmates. *See e.g., Weiler v. Purkett*, 137 F.3d at 1051 ("A few individual examples of unequal treatment are insufficient to provide more than

*Id.* at 8, 10-11. After screening Lamar's complaint, the Court ordered service on all defendants.[2] Doc. Nos. 3-4.

Before the Court is a motion for summary judgment, brief-in-support, and statement of undisputed facts filed by Seamster and Harris (the "Defendants") (Doc. Nos. 37-39). Although he was granted several extensions of time to do so (*see* Doc. Nos. 44, 48 & 50), Lamar failed to file a timely response to the motion. And because Lamar failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 39, those facts are deemed admitted. *See* Local Rule 56.1(c). The Defendants' statements of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and they are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative

minimal support to an inference of classwide purposeful discrimination."); *Inmates of Neb. Penal and Correctional Complex v. Greenholtz,* 567 F.2d 1368, 1381 (8th Cir. 1977) (two or three individual cases of discrimination insufficient to provide more than minimal support to an inference of classwide purposeful discrimination). *See also Hughes v. Banks*, No. 1:07-CV-00027, 2011 WL 3861368, at *2 (E.D. Ark. Aug. 19, 2011) (equal protection claim failed where plaintiff only identified one inmate who was allegedly treated differently than him).

[2] Lamar's claims against Deputy Medical Director Aundrea Culclager were dismissed for failure to exhaust available administrative remedies. Doc. No. 31.

evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III. Facts[3]

### *Lamar's Relevant Medical Records & Grievances*

Lamar was diagnosed with HIV around 2001. He is on a medication regimen of Descovy/Tivicay, which has been effective in controlling his viral load. Doc. No. 39-1, *Affidavit of Nicholas Gowen, M.D.* ("*Gowen Affidavit*"), at ¶ 4. Previously, Lamar was prescribed the antiviral medication D4T; one of the known side effects of D4T is peripheral neuropathy. *Id.*

On September 1, 2023, Lamar was transferred to the ADC's Tucker Unit. Doc. No. 39-2 (External Movements). At the time of his transfer, Lamar did not have an active medical prescription for medical shoes or restrictions. *See* Doc. No. 39-3 (January 23, 2024 encounter notes stating that Lamar's chart showed his shoe prescription expired in March 2023).

On September 19, 2023, Lamar presented to Health Services with complaints of lower back pain and urinary concerns. Doc. No. 39-4. He was treated by defendant APN Seamster. *Id.* Lamar also requested medical shoes and a medical mat. *Id.* Upon examination, Lamar demonstrated full range of motion with symmetrical sensation and normal gait and appropriate bilateral foot structure. *Id.* Seamster observed a 2 cm leg length discrepancy. *Id.* Seamster ordered duloxetine and discontinued gabapentin. *Id.* He also ordered a post void residual urine test to evaluate Lamar's urinary concerns. *Id.* Seamster determined that there was no medical indication for medical shoes, an extra mat or lifting restrictions, and counseled Lamar on lifestyle interventions, including weight loss and exercise/core strengthening. *Id.*

On September 20, 2023, Lamar grieved that Seamster improperly denied him medical shoes, gabapentin, and medical restrictions. Doc. No. 39- 5 (Grievance TU–23–00485). Defendant

---

[3] These facts were taken from the statements of fact and evidence provided by the parties. Opinions, legal conclusions, and immaterial facts are omitted.

Laconya Harris reviewed the grievance at Step Two and determined that it was without merit. *Id.* Director Culclager upheld Harris' decision. *Id.*

On September 26, 2023, Lamar refused a chronic care visit with Seamster. Doc. No. 39-4.

On October 6, 2023, Lamar was seen by non-party Angelica Dennis, NP at Regional One Health in Memphis, Tennessee, regarding his HIV diagnosis. Doc. No. 39-7. She noted that he reported 100% compliance with medications, no side effects, and that he felt well. *Id.* Dennis reviewed Lamar's medication regimen, including Descovy/Tivicay, acetaminophen, and duloxetine, and recommended no changes. *Id.* She also recommended a follow-up visit in six months. *Id.*

On October 10, 2023, Lamar presented to health services with complaints of left wrist pain and a request for a wrist brace following an earlier injury and was examined by Seamster. Doc. No. 39-8. Lamar reported that his current medications were effective for pain. *Id.* Upon examination, Lamar presented with a coordinated gait and bilateral symmetrical sensation. He showed full range of motion of his bilateral upper extremities/wrist/fingers, bilaterial grip strength of 5/5, and no joint arrhythmia, deformity, tenderness, or effusion. *Id.* Seamster found no medical indication for a wrist brace.

On October 18, 2023, Lamar grieved that Harris denied his request to see a provider other than Seamster, whom he alleged did not provide him with proper medical care related to his left wrist injury. Doc. No. 39-9 (Grievance TU–23–00561). Harris reviewed the grievance at Step Two and determined that it was without merit. *Id.* Culclager upheld Harris' decision. *Id.*

On November 30, 2023, Lamar presented to health services with complaints of neuropathy. He reported feeling bilateral numbness, sharp pains, and pins and needle sensations to both lower and upper extremities, feet, and hands, and was examined by Seamster. Doc. No. 39-10. He

complained that his pain medication (duloxetine) was ineffective. *Id.* Upon examination, Lamar presented with a coordinated gait, bilateral symmetrical sensation, full range of motion, and no joint arrhythmia, tenderness, or effusion. *Id.* Seamster increased Lamar's duloxetine dosage to address his complaints of ineffectiveness. *Id.*

On December 20, 2023, Lamar presented to health services for a chronic care visit. Doc. No. 39-11. Non-party Dr. James Beck ordered continuation of his current medications and a follow-up visit in three months. *Id.*

On January 23, 2024, Lamar was seen by non-party Dr. Gary Kerstein regarding his request for medical shoes and restrictions. Doc. No. 39-12. Dr. Kerstein noted that Lamar had no complaints of pain or difficulties with activities of daily living. *Id.* Dr. Kerstein reviewed Lamar's medical records and noted that his medical shoe prescription expired in March 2023, and his work restriction prescription expired in August 2023. *Id.* Dr. Kerstein noted Lamar had no physical complaints "that would be helped by these scripts." *Id.*

On February 14, 2024, Lamar grieved that he had an appointment with Dr. Beck on February 13, 2024, but Harris removed him from Dr. Beck's provider list to prevent him from being evaluated for medical shoes. Doc. No. 39-13 (Grievance TU–24–00095). The response to his Step One grievance stated: "Dr. Beck was not scheduled to work at Tucker Unit on 2-13-24. You were on Seamster APRN provider list on 2-13-24 for medical shoes. You were rescheduled due to walk-in emergencies." *Id.* Lamar proceeded to Step Two, stating that he had seen Dr. Beck in provider call that day. *Id.* Harris reviewed the grievance at Step Two and determined that it was without merit. *Id.* Director Culclager upheld Harris' decision. *Id.*

On February 15, 2024, Lamar was seen by Seamster for his request for medical shoes. Doc. No. 39-14. Upon examination, Lamar presented with a coordinated gait, full range of motion in

all extremities, appropriate bilateral structure, and no joint arrhythmia, tenderness, or effusion. *Id.* Based on his evaluation, Seamster determined that there was no medical indication for medical shoes. *Id.*

On February 21, 2024, Lamar grieved that Seamster did not provide him with medical shoes. Doc. No. 39-15 (Grievance TU–24–00094). Harris reviewed the grievance at Step Two and determined that there was no medical indication for medical shoes and found the grievance without merit. *Id.* Culclager upheld Harris' decision. *Id.*

***Dr. Nicholas Gowen's Opinion***

Dr. Nicholas Gowen, a non-party medical doctor, signed an affidavit in support of the Defendants' motion for summary judgment. Doc. No. 39-1, *Affidavit of Nicholas Gowen, M.D*. Dr. Gowen is a hospitalist at the Central Arkansas Veterans Healthcare Administration and an Assistant Professor of Medicine at the University of Arkansas for Medical Sciences. *Id.* at ¶ 2. He is Board Certified in Internal Medicine. *Id*. Dr. Gowen reviewed Lamar's medical records to determine if he received appropriate care for his complaints of neuropathy and requests for accommodations between September 2023 and March 2024. *Id.* at ¶¶ 3, 5. Based on his review of the records, as well as his education, training, and experience, he found that it was appropriate for the medical providers, including Seamster, to prescribe Lamar duloxetine for pain management related to his neuropathy. *Id.* at ¶ 6. Dr. Gowen further concluded that it was appropriate for Seamster to determine that neither medical shoes nor a double mat were needed and that stretching/exercise and monitoring were appropriate to treat Lamar's borderline discrepancy in his leg lengths. *Id.* at ¶ 7. He further found that Seamster appropriately ordered lab and urinary tests to address Lamar's complaints of urinary issues. *Id.* at ¶ 8.

## IV. Analysis

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976). To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undisputed material evidence in the record does not establish that the Defendants were deliberately indifferent to Lamar's serious medical needs between September 2023 and March 2024. The record shows that Lamar was evaluated and treated in response to his complaints by both defendant Seamster and non-party providers. He was provided with pain medication, and a determination was made that he did not need medical shoes, an extra mat or lifting restrictions. Harris' only role in Lamar's medical treatment was to review grievances he filed regarding Seamster's treatment. Lamar's opinion that he should have received different treatment constitutes a disagreement with Seamster's treatment decisions that fails to rise to the level of a constitutional violation. And because Seamster provided adequate treatment to Lamar, there was no corrective action needed on Harris' part. The Defendants are therefore entitled to summary judgment as a matter of law.

## V. Conclusion

The undisputed facts establish that the Defendants were not deliberately indifferent to Lamar's serious medical needs. The Defendants' motion for summary judgment (Doc. No. 37) is therefore GRANTED, and Lamar's claims against Seamster and Harris are DISMISSED WITH PREJUDICE.

DATED this 10th day of September, 2026.

UNITED STATES DISTRICT JUDGE